15 P.3d 1283 (2001)
Tae KIM, limited guardian for the Estate of Peter Kim; Ki Young Kim; and Won Sook Kim, Appellants,
v.
BUDGET RENT A CAR SYSTEMS, INC., a Delaware corporation, Respondent,
Demicus Young, Defendant.
No. 67352-7.
Supreme Court of Washington, En Banc.
Argued March 1, 2000.
Decided January 25, 2001.
As Amended January 31, 2001.
*1284 Charles Kenneth Wiggins, Kenneth Wendell Masters, Bainbridge Island, Christopher Cyrus Pence, Richard Andrew Bergh, Seattle, for Appellants.
Phillips & Webster, K.C. Webster, Ralph Glenn Phillips, Woodinville, for Respondent.
MADSEN, J.
In this case we are asked to decide whether plaintiff Peter Kim may maintain a negligence action against Budget Rent A Car for injuries sustained by plaintiff after one of Budget's vehicles, with the keys left in its ignition, was stolen by a third party and used to commit a vehicular assault against plaintiff. The trial court dismissed this case on summary judgment. We accepted direct review, and affirm, holding that Budget did not owe a duty of care to plaintiff and that Budget's negligence was not the proximate cause of plaintiff's injuries.

FACTS
On the night of September 6, 1991, Demicus Young, an accomplished thief, went to Pacific Highway South in the city of Sea Tac for the purpose of stealing a vehicle. Young trespassed onto Budget's Seattle Region Administrative Facility parking lot, which is located off Sea Tac airport property. No vehicles are rented from Budget's administrative facility and it has no fences, barriers, lights, security personnel, or cameras. On Budget's administrative parking lot Young found an unlocked Dodge minivan with the keys in its ignition and stole the vehicle. There is no evidence in the record that prior to Young's theft a vehicle had ever been stolen from Budget's administrative facility.
Young drove home and went to sleep. Then, the next day, he consumed alcohol and smoked marijuana. He then attempted to drive the minivan, and while pulling out of his driveway struck a telephone pole. Concerned observers contacted the police to report Young's suspicious behavior. When Young saw the police, he attempted to speed away, believing the police were pursuing him. He then ran a stop sign and caused the accident severely injuring plaintiff.
Plaintiff filed suit against Young and Budget. The trial court granted Budget's motion for summary judgment. Plaintiff petitioned this court for direct review, which we granted.

*1285 ANALYSIS

I
"It is an elementary principle that an indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured...." Routh v. Quinn, 20 Cal.2d 488, 491, 127 P.2d 1, 3 (1942); see also Folsom v. Burger King, 135 Wash.2d 658, 671, 958 P.2d 301 (1998). The existence of duty is a question of law. Folsom, 135 Wash.2d at 671, 958 P.2d 301 (citing Pedroza v. Bryant, 101 Wash.2d 226, 228, 677 P.2d 166 (1984)). Plaintiff asks us to hold that Budget owed a duty of care to plaintiff to prevent Young from stealing its vehicle and committing a vehicular assault. Under the facts of this case, we are unwilling to do so.
Plaintiff contends that "Washington courts recognize that defendants have a duty to protect against the criminal acts of third persons where the defendant's action or omission involves an unreasonable risk of harm to the plaintiff via the conduct of the tort-feasor." Pl.Br. at 35. This is an overly broad statement of our prior cases.
"`The general rule at common law is that a private person does not have a duty to protect others from the criminal acts of third parties.'" Nivens v. 7-11 Hoagy's Corner, 133 Wash.2d 192, 199, 943 P.2d 286 (1997) (quoting Hutchins v. 1001 Fourth Ave. Assocs., 116 Wash.2d 217, 223, 802 P.2d 1360 (1991)). This is an expression of the policy that "one is normally allowed to proceed on the basis that others will obey the law." Hutchins, 116 Wash.2d at 236, 802 P.2d 1360. In a case factually similar to the case at bar, Justice Traynor noted
[i]n one sense the problem presented involves the duty of the owner of an automobile so to manage it as not to create an unreasonable risk of harm to others. It bears emphasis, however, that when [the defendant] left the car it was in a position where it could harm no one, an[d] no harm occurred until it had been taken by a thief. Thus a duty to prevent such harm would involve more than just the duty to control the car, it would involve a duty to prevent action of a third person. Ordinarily, however, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another.
Richards v. Stanley, 43 Cal.2d 60, 65, 271 P.2d 23, 27 (1954).
Plaintiff asks us to depart from this general rule, relying in part on the Restatement (Second) of Torts § 302B (1965), which states:
An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.
This section does not support imposition of a duty in this case. As comment e to the section explains, a duty to guard against third party conduct may exist where there is a special relationship to the one suffering the harm, or "where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable [person] would take into account." Restatement (Second) of Torts § 302B cmt. e (1965). This does not mean that any risk of harm gives rise to a duty. Instead, an unusual risk of harm, a "high degree of risk of harm," is required. Id. There is nothing in the facts of this case indicating that a high degree of risk of harm to plaintiff was created by Budget's conduct of leaving the keys in the ignition of an automobile in an area where Budget had never had a prior vehicle theft.
Our case law does not support imposition of a duty either. Generally, our cases, involving a duty to protect a party from the criminal conduct of another, have fallen into one of two categories. We have found a duty where there is a "special relationship" with the victim. See, e.g., Nivens, 133 Wash.2d 192, 943 P.2d 286 (business to business invitee); Niece v. Elmview Group Home, 131 Wash.2d 39, 929 P.2d 420 (1997) (party entrusted with the care of a dependant); Gurren v. Casperson, 147 Wash. 257, 265 P. 472 (1928) (innkeeper to guest). And second, we *1286 have imposed a duty where there is a "special relationship" with the criminal. See, e.g., Hertog v. City of Seattle, 138 Wash.2d 265, 979 P.2d 400 (1999) (stateprobationer); Petersen v. State, 100 Wash.2d 421, 671 P.2d 230 (1983) (psychotherapistpatient); Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 934, 653 P.2d 280 (1982) (customerstore owner).
For instance, in Hutchins we held that a landowner was not liable for a trespasser's perpetration of a criminal act against a noninvitee on the owner's land. Hutchins, 116 Wash.2d at 226, 802 P.2d 1360. In Nivens, we held that a business may under some circumstances be liable for a third party's criminal acts against an invitee. Our holding in Nivens was predicated explicitly on the fact that "a special relationship exists between a business and an invitee because the invitee enters the business premises for the economic benefit of the business." Nivens, 133 Wash.2d at 202, 943 P.2d 286. Similarly, in Passovoy v. Nordstrom, Inc., 52 Wash. App. 166, 758 P.2d 524 (1988), the Court of Appeals held that Nordstrom could be liable for injuries sustained by its patrons caused by an actively pursued and fleeing shoplifter. The consistent theme in these cases is that no duty exists absent a special relationship with either the criminal or victim. Id. at 172-73, 758 P.2d 524. Neither circumstance is present here.[1]
Even if we were to adopt a very broad reading of our duty cases and hold that a defendant has an obligation to guard against all foreseeable third party criminal conduct, we would not find a duty on these facts. Budget could not foresee a theft from its administrative facility any more than any other private business owner would foresee a theft from its parking lot. If Young had stolen the minivan from Budget's "rental lot," an argument could be made that the theft was potentially foreseeable, as Budget, as well as other car rental companies, often experience thefts from their rental facilities. But this is not the case here. There is nothing in the record indicating that Budget had ever had a car stolen from its administrative facility and we believe "`[i]t would be unjust to require one to anticipate that a crime will be committed unless there has been a warning or unless a previous criminal act occurred in the same premises.'" Prosser and Keeton on The Law of Torts § 33, at 201 n. 78 (W. Page Keeton ed., 5th ed.1984) (quoting Brogan Cadillac-Oldsmobile Corp. v. Cent. Jersey Bank & Trust Co., 183 N.J.Super. 333, 443 A.2d 1108, 1110 (1981), aff'd, 190 N.J.Super. 500, 464 A.2d 1141 (1983)).
Plaintiff also relies on the rule found in comment e, section G to Restatement § 302B. Pl.Br. at 36. That section states that a duty of care is created "[w]here property of which the actor has possession or control affords a peculiar temptation or opportunity for intentional interference...." Restatement § 302B cmt. e, § G. Although we have never utilized this comment to impose a tort duty, we noted in Hutchins,
cases where this exception to the general rule (of no liability for the criminal acts of third parties) is applied involve some condition of the property which, by its nature, is quite out of the ordinary, i.e., presenting a special or peculiar temptation or opportunity, and involve a high degree of risk of harm.
Hutchins, 116 Wash.2d at 232, 802 P.2d 1360 (first emphasis added).
There is nothing "quite out of the ordinary" about Budget's administrative facility parking lot or the Dodge minivan that was stolen. Plaintiff implies that arguably, Budget knew or should have known its vehicle lots were an especial temptation and, if proved, Budget could have a duty of care to safeguard against theft. Even were this true, it fails to address the question presented in this case, which solely involves Budget's administrative facility parking lot, not a rental vehicle lot or any other Budget vehicle lot. Vehicles were not rented from Budget's administrative facility and, as noted, there is no *1287 indication there had ever been a prior theft from this location. In essence, Budget's administrative lot is no different from the parking lots of thousands of other Washington businesses.
Nevertheless, plaintiff urges that unique circumstances here justify permitting this case to proceed. The principal out-of-state case relied upon by plaintiff, Cruz, lists several "special circumstances" under which a court might permit a "key in ignition" case to go forward. Cruz v. Middlekauff Lincoln Mercury, Inc., 909 P.2d 1252, 1255 (Utah 1996). This list includes:
(1) significant criminal activity in the area in which the vehicle was left ...; (2) prior thefts of the defendant's vehicles ...; (3) irresponsible or reckless nature of people frequenting the area ...; (4) lack of surveillance of the vehicle ...; (5) vehicle left for extended period of time ...; and (6) type and size of vehicle uniquely attractive or capable of inflicting serious damages[.]
Id. at 1256 (citations omitted).
We have significant reservations as to the merit of the "Cruz factors" in general, as well as to their factual application to this case.
As to the first of the Cruz factors, plaintiff refers to the high crime rate in the Sea-Tac area. What plaintiff fails to note is that this court has rejected utilization of high crime rates as a basis for imposing a tort duty. As we noted in Hutchins,
there is a basis to conclude that the high incidence of crime in an urban area does not favor imposition of the duty urged by plaintiffs, but instead cuts the other way. That is, if the premises are located in an area where criminal assaults often occur, imposition of a duty could result in the departure of businesses from urban core areas-an undesirable result.
Hutchins, 116 Wash.2d at 236, 802 P.2d 1360.
As to the second "factor," there is nothing in the record indicating Budget had ever had a prior theft from its administrative facility. We believe the fact that Budget had prior thefts from its "rental lots" as irrelevant.
As to the third factor, there is little indication as to the irresponsible nature of the persons frequenting the area in which Budget's administrative facility is located. Even if there were, we believe imposition of liability for this reason would conflict with our statement in Hutchins dealing with high crime areas.
The fourth Cruz factor is met in this case. There was a lack of surveillance of its Dodge minivan on the part of Budget. However, we find it untenable that this fact alone may serve as the basis for imposition of a tort duty. If that were the case, every private individual leaving a car with a key in the ignition would be liable any time the vehicle is left unattended. That is a result foreclosed by Sailor and Pratt and one that we are unwilling to accept. Sailor v. Ohlde, 71 Wash.2d 646, 430 P.2d 591 (1967); Pratt v. Thomas, 80 Wash.2d 117, 491 P.2d 1285 (1971).
As to the fifth factor, we view leaving a vehicle overnight, in and of itself, as not being a significant enough period of time to establish liability.
Finally, with regard to the sixth factor, we do not believe that a Dodge minivan is the type of vehicle that is uniquely attractive or capable of inflicting serious damage, any more than any other type of passenger vehicle.
Plaintiff's final contention is that RCW 46.61.600 is evidence of the Legislature's intent to create a tort obligation on the part of vehicle owners to not leave keys in the ignition of their automobile. See Hansen v. Friend, 118 Wash.2d 476, 482, 824 P.2d 483 (1992) (holding that "RCW 66.44.270(1) imposes a duty of care on social hosts not to serve liquor to minors."). Plaintiff also argues that RCW 46.61.600 should be submitted to the jury as evidence of the proper standard of conduct for vehicle owners. However, if RCW 46.61.600 does not govern Budget's actions in this case, it is clearly not evidence of the proper standard of conduct for Budget, nor is it evidence of the Legislature's intent to create a duty on the part of Budget. Therefore, we must address the question of whether the statute applies to vehicles left on private property. We conclude it does not.
RCW 46.61.600(1) provides:

*1288 No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key and effectively setting the brake thereon and, when standing upon any perceptible grade, turning the front wheels to the curb or side of the highway.
The scope of this provision is limited by RCW 46.61.005(1), which states:
The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except ... [w]here a different place is specifically referred to in a given section.
(Emphasis added). The term "highways" is defined by RCW 46.04.197 to include only those areas that are "publicly maintained ."
Plaintiff argues RCW 46.61.005 is inapplicable in this case because RCW 46.61.600(1) is not a provision "relating to the operation of vehicles," but rather to vehicles that are being parked. Therefore, argues plaintiff, RCW 46.61.600(1) applies to vehicles parked on either public or private property. We find this argument untenable. The act of parking and securing a vehicle, as the last step in its operation, is clearly "relating to the operation of vehicles" for purposes of RCW 46.61.600(1).
Therefore, because Budget's administrative facility is not a "publicly maintained highway" we hold that Budget had no statutorily imposed duty to remove the keys from its vehicles. Other jurisdictions are overwhelmingly in accord. See, e.g., Schaff v. R.W. Claxton, Inc., 144 F.2d 532 (1944); Harper v. Epstein, 16 Ill.App.3d 771, 306 N.E.2d 690 (1974); George v. Breising, 206 Kan. 221, 477 P.2d 983 (1970); Berluchaux v. Employers Mut. Of Wausau, 182 So.2d 98 (La.Ct.App.1966); Curtis v. Jacobson, 142 Me. 351, 54 A.2d 520 (1947); Kalberg v. Anderson Bros. Motor Co., 251 Minn. 458, 88 N.W.2d 197 (1958); Elliott v. Mallory Elec. Corp., 93 Nev. 580, 571 P.2d 397 (1977); Stone v. Bethea, 251 S.C. 157, 161 S.E.2d 171 (1968); Martel v. Chattanooga Parking Stations, Inc., 224 Tenn. 232, 453 S.W.2d 767 (1970).
Also, we do not believe RCW 46.61.600 was enacted for the purpose of protecting the class of persons to which plaintiff is a member. As Justice Rosellini wrote in reference to RCW 46.61.600,
[i]t appears to me that the statute is designed for the protection of the owner and for the protection of others in the path of the vehicle if it should be put in motion by reason of having been insecurely parked.
Pratt, 80 Wash.2d at 120, 491 P.2d 1285 (Rosellini, J., concurring). RCW 46.61.600 was enacted to prevent runaway vehicles on public streets. Other jurisdictions have found similarly. DeCastro v. Boylan, 367 So.2d 83 (La.Ct.App.1979); Rollins v. Petersen, 813 P.2d 1156 (Utah 1991). We do not believe the statute was enacted to protect members of the public from the type of accident that occurred in this case.
Accordingly, we hold that Budget did not owe a duty of care to plaintiff.

II
Even assuming a duty was owed here, we cannot find that Budget's actions were the proximate cause of plaintiff's injuries. On two prior occasions we have held that the owner of an unsecured vehicle that is stolen and later involved in an accident is not liable for a third party's damages caused by the accident. Sailor, 71 Wash.2d 646, 430 P.2d 591; Pratt, 80 Wash.2d 117, 491 P.2d 1285. Budget contends that these decisions are controlling authority under the facts of this case. We agree.
In Sailor, the defendant left the key to his pickup truck, which was parked at a warehouse, in the ignition. Sailor, 71 Wn.2d at 646. A nine-year-old boy stole the truck and crashed into a service station, causing significant damage. Id. We held that the truck owner was not liable for the damage to the service station caused by the thief's negligent driving. Id. at 647-48.
In Pratt, the defendant left a station wagon, without the ignition locked, in a high school parking lot. Three high school students stole the vehicle. The students drove the vehicle for "some distance ... [and drove to] the home of another boy...." Pratt, 80 Wash.2d at 118, 491 P.2d 1285. "After [the *1289 students] had driven the stolen vehicle for a while, the state patrol saw it and pursued. A high speed chase followed. The accident occurred and the [plaintiffs] were injured." Id. at 118, 491 P.2d 1285. The trial court dismissed the plaintiffs' complaint and they appealed.
Without resolving the question of duty, we held, as a matter of law, that the defendant's negligence was not the proximate cause of plaintiff's injuries:
Here it is plain the accident which caused [plaintiff's] injuries was not a part of the natural and continuous sequence of events which flowed from [defendant's] act in leaving their station wagon in the parking lot. It was the result of new and independent forces. Among the new forces were the stealing of the vehicle, the pursuit by the state patrol, the attempt by the thieves to run from the officers and, finally, the accident.
When, as here, the facts do not admit of reasonable differences of opinion, proximate cause is a question of law to be decided by the court.
Id. at 119, 491 P.2d 1285. Just as in Pratt, proximate cause is lacking in this case.
The first prong of proximate cause is cause in fact. Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 478, 951 P.2d 749 (1998). "Cause in fact concerns `but for' causation, events the act produced in a direct unbroken sequence which would not have resulted had the act not occurred." Hertog v. City of Seattle, 138 Wash.2d 265, 282-83, 979 P.2d 400 (1999). The question of cause in fact is normally left to the jury, however, if "reasonable minds could not differ, th[is] factual question[] may be determined as a matter of law." Id. at 275, 979 P.2d 400.
Plaintiff contends that Pratt is distinguishable from the case at bar. We disagree. Just as in Pratt, the accident here was not produced "by the natural and continuous sequence of events" initiated by the defendant's failure to secure a vehicle. In Pratt, a vehicle was stolen from a parking lot. Here, the vehicle was stolen from a parking lot on the premises of Budget's private administrative facility. In Pratt, the thieves made at least one temporary stop after stealing the vehicle. Here, Young went home, went to sleep, and then became intoxicated and smoked marijuana after stealing Budget's minivan. In both cases a police chase and subsequent accident ensued. These similarities bring this case squarely within the ambit of Pratt's holding.
Legal cause is also lacking in this case. Legal cause is the second prong of proximate causation and "[is] a question of law" for the court. McCoy v. Am. Suzuki Motor Corp., 136 Wash.2d 350, 359, 961 P.2d 952 (1998).
Legal causation is a much more fluid concept [than cause in fact]. It is grounded "in policy determinations as to how far the consequences of a defendant's acts should extend." The focus in legal causation analysis is on "whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." This inquiry depends upon `"mixed considerations of logic, common sense, justice, policy, and precedent.'"
Tyner v. Dep't of Soc. & Health Servs., 141 Wash.2d 68, 82, 1 P.3d 1148 (2000) (quoting Schooley, 134 Wash.2d at 478-79, 951 P.2d 749).
Plaintiff relies on McCoy for the proposition that legal cause is established in this case. In McCoy the plaintiff was a rescuer who had come to the aid of an individual who sustained injuries on a freeway, allegedly caused by Suzuki's faulty manufacturing of a motor vehicle. McCoy, 136 Wash.2d at 353, 961 P.2d 952. After aiding the accident victim, and while still at the scene of the accident, the plaintiff was struck by a passing vehicle. Id. This court held that legal cause was not a bar to an action by the plaintiff against Suzuki for injuries caused by the passerby motorist. Id. at 360, 961 P.2d 952.
Plaintiff contends that the harm suffered in this case is no more remote than the harm suffered by the plaintiff in McCoy. We disagree. In McCoy the plaintiff was a rescuer present at the scene of an accident and was injured in a foreseeable manner when a third party swerved over to the shoulder of the freeway and struck him. Thus, McCoy involved *1290 application of the rescuer doctrine. As stated by Judge Cardozo, the rescuer doctrine embodies the principle that "danger invites rescue." Wagner v. Int'l Ry. Co., 232 N.Y. 176, 133 N.E. 437, 437 (1921). Therefore, because "it is foreseeable a rescuer will come to the aid of the person imperiled by the tortfeasor's actions," McCoy, 136 Wash.2d at 355, 961 P.2d 952, a rescuer's injuries, which are caused in a foreseeable manner, are rarely too attenuated to hold the original tortfeasor liable. A case involving the rescuer doctrine with its significantly different analytical underpinnings does not provide a proper basis for comparison in this case involving the criminal acts of third parties.
At a minimum, the remoteness in time between the criminal act and the injury is dispositive to the question of legal cause in this case. See Devellis v. Lucci, 697 N.Y.S.2d 337, 339, 266 A.D.2d 180 (App.Div. 1999) ("passage of 24 days between the theft of the vehicle and the injury-producing event vitiated any proximate cause between the purported negligence and the accident as a matter of law"). Even if it were negligent for Budget to leave the keys inside of its minivan, "the responsibility for such negligence must terminate at some time in the future...." Gmerek v. Rachlin, 390 So.2d 1230, 1231 (Fla.App.1980). One who fails to remove the keys from their vehicle should not be "answerable in perpetuity for the criminal and tortious conduct of others...." Devellis, 697 N.Y.S.2d at 339. Young went home, went to sleep, and became intoxicated before criminally causing the accident injuring plaintiff the day after the theft.
Finally, we note that of the few cases that have allowed third party tort liability in "key in ignition" cases, most have not involved the type of attenuated facts present here. See, e.g., McClenahan v. Cooley, 806 S.W.2d 767 (Tenn.1991) (vehicle stolen at 11:00 a.m., accident at 11:33 a.m.); Cruz, 909 P.2d 1252 (vehicle stolen in early evening, accident at 8:00 p.m.); Kozicki v. Dragon, 255 Neb. 248, 583 N.W.2d 336 (1998) (vehicle stolen at 5:45 a.m., accident later that morning).
We hold that proximate cause is lacking, as a matter of law, and accordingly Budget is not liable for plaintiff's injuries.

CONCLUSION
Under the facts of this case Budget did not owe a duty of care to plaintiff. Further, Budget's negligent behavior (even if proved) was not the proximate cause of plaintiff's injuries as a matter of law. Accordingly, the superior court's grant of summary judgment in favor of Budget is affirmed.
ALEXANDER, C.J., SMITH, JOHNSON, SANDERS, BRIDGE, JJ., GUY, TALMADGE, and BAKER, J. Pro Tems.
NOTES
[1] Plaintiff relies on Bernethy v. Walt Failor's Inc., 97 Wash.2d 929, 934, 653 P.2d 280 (1982), in which we held that a gun shop owner may be liable to a third party for supplying a firearm to an intoxicated patron. The basis for our holding in Bernethy was negligent entrustment, a doctrine which, appropriately, has not been argued by plaintiff to be applicable in this case.