[No. 28884-2-II. Division Two. July 29, 2003.]

KAREN M. MINAHAN, *Respondent*, v. WESTERN WASHINGTON FAIR ASSOCIATION, ET AL., *Petitioners*.

*John Francis Kennedy* and *Tamara S. Clower* (of *Law Office of John Francis Kennedy*); *H. Andrew Saller, Jr.* (of *Vandeberg Johnson & Gandara*); and *Jeffrey P. Downer* and *David L. Martin* (of *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*), for petitioners.

*Harold T. Dodge* and *Daniel L. Hannula* (of *Rush Hannula Harkins & Kyler, L.L.P.*), for respondent.

BRIDGEWATER, J.— Karen M. Minahan was severely injured when a car driven by a grossly intoxicated driver struck her multiple times. Before the accident, Minahan was working at a high school dance at the Western Washington Fair Association's fairgrounds. When the accident occurred, Minahan was loading equipment into her employer's vehicle, which was legally parked on 9th Avenue in Puyallup. A fairgrounds employee had instructed Minahan's employer to load from that location. Minahan sued her employer, the School District, and the Association. The superior court denied the defendants' summary judgment motions, which claimed that legal causation was lacking. We hold that the superior court's denial was improper because the defendants owed Minahan no duty under her premises, lessor, and employer liability theories, which defeats legal cause under those theories. And as to Minahan's claim alleging an unreasonably dangerous activity, we hold again that the superior court erred. The claimed dangerous activity bore a relationship too remote and insubstantial to Minahan's injury to support legal cause. We reverse.

## FACTS

On the evening of June 16, 1997, the Puyallup School District (School District) hosted a high school dance at the Western Washington Fair Association (Association) fairgrounds. The School District leased the fairgrounds' Expo Hall for the event and selected Alan Bettcher, a disc jockey from Celebrations Entertainment, for the evening's music. Bettcher hired Minahan, his mother, to help out at the

dance. Minahan's employment was for a small sum and lasted only the evening of June 16.

Bettcher and Minahan arrived early to unload equipment and set up. They approached the fairgrounds on 9th Avenue, which borders the northern portion of the fairgrounds, and they sought entrance. They found no knowledgeable official and, consequently, Bettcher parked along 9th Avenue. The spot was a legal parking space near the Expo Hall and Gold Gate.[1]

Shortly thereafter, Bettcher spoke with Wes Hanson, a fairgrounds event attendant. Bettcher said that he needed to enter the fairgrounds through the service gate so that he could unload. Hanson responded that he did not have the gate keys and that Bettcher should unload from his parking spot on 9th Avenue, which Bettcher had initially selected. Bettcher's vehicle remained in that spot throughout the night.

At about 6:45 P.M., Sandra Skrivan began drinking at the Fraternal Order of Eagles Lodge in Puyallup. Skrivan, who weighed 127 pounds, drank 17 or 18 mixed drinks in a five-hour period. She eventually left the lodge, got in her car, and started driving home. She strayed from her usual route and drove down 2nd Street, toward 9th Avenue. Unfortunately, Skrivan's trip home coincided with the end of the dance at the fairgrounds.

At their parking spot on 9th Avenue, Bettcher and Minahan were finishing up loading the equipment back into Bettcher's vehicle. With the task nearly complete, Minahan stood behind the vehicle preparing to load the last small box when Skrivan, approaching from 2nd Street, turned left onto 9th Avenue. Skrivan's turn was well wide of the vehicle lane and she struck Minahan, pinning her between the two vehicles. Minahan never saw Skrivan's car coming. After the initial impact, Skrivan put her car in reverse, backed up, shifted to drive, and struck Minahan again. Skrivan repeated the same tragic sequence yet again, a third time. After Skrivan backed up from the third impact, Hanson,

---

[1] Gold Gate is one of many vehicle entrances to the fairgrounds.

who saw the accident, was able to take the keys out of the ignition.

Minahan's injuries were severe. Her right leg was amputated above the knee; she suffered severe damage to her left leg; she was in a coma for three weeks and hospitalized for two months because of cerebral, pulmonary, and leg injuries; and she has since had approximately 25 operations.

Skrivan pleaded guilty to vehicular assault (RCW 46.61.522(1)(a) or (b)). Minahan settled with Skrivan and the Fraternal Order of Eagles without filing suit. She sued the Association, the School District, and Bettcher, alleging unsafe conditions, failures to warn, and negligence. The defendants filed motions for partial summary judgment to establish that Skrivan and the Fraternal Order of Eagles proximately caused Minahan's damages. The superior court granted the motions. The defendants also filed motions for summary judgment of dismissal, contending that their actions did not proximately cause Minahan's damages. The superior court denied these motions. The defendants sought discretionary review, which we granted.

## ANALYSIS

"Summary judgment is appropriate 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985) (citing *Herskovits v. Group Health Coop. of Puget Sound*, 99 Wn.2d 609, 613, 664 P.2d 474 (1983)). "[W]hen reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." *Hartley*, 103 Wn.2d at 775. On a summary judgment motion, we take the position of the trial court, and we assume facts in a light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

To prove each of her several negligence theories, Minahan must establish duty, breach, injury, and proximate cause. *See Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677

P.2d 166 (1984). The breach of a duty must be shown to have proximately caused the injury. *Petersen v. State*, 100 Wn.2d 421, 435, 671 P.2d 230 (1983).

■■ Proximate cause has two elements: cause in fact and legal cause. *Hartley*, 103 Wn.2d at 777. Here, the defendants dispute legal cause. "The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. A determination of legal liability will depend upon 'mixed considerations of logic, common sense, justice, policy, and precedent.' " *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998) (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)). Legal cause is a question of law for the court to decide. *Kim v. Budget Rent A Car Sys.*, 143 Wn.2d 190, 204, 15 P.3d 1283 (2001).

■■ These well-established rules have spawned a serious point of contention in this case: whether we may analyze proximate cause without addressing duty. The defendants ask us to hold, as a matter of law, that drunken driving as egregious as Skrivan's may be the only proximate cause of a plaintiff's injuries.[2] They ask us to premise this holding solely on a public policy that abhors drunken driving. Although we agree with their policy choice, the defendants' proposed rule paints with too broad a stroke and ignores competing, established principles of causation.

> It is quite possible, and often helpful, to state every question which arises in connection with "proximate cause" in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? Such a form of statement does not, of course, provide any answer to the question, or solve anything whatever; but it does serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than to the

---

[2] The defendants have not argued that Skrivan's conduct was a superseding cause of Minahan's injuries. *See Smith v. Acme Paving Co.*, 16 Wn. App. 389, 396-97, 558 P.2d 811 (1976).

mechanical sequence of events which goes to make up causation in fact. *The question becomes particularly helpful in cases where the only issue is in reality one of whether the defendant is under any duty to the plaintiff at all—which is to say, whether he stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for his benefit.* Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same.

WILLIAM L. PROSSER, THE LAW OF TORTS 244-45 (4th ed. 1971) (emphasis added) (footnotes omitted).

Precedent supports this statement and its application here. In *Hartley*, the plaintiff sued the State and Pierce County for negligence in failing to revoke the license of a driver who drove drunk and killed plaintiff's decedent. After quoting the same Prosser passage as above, the court stated that "it may be immaterial whether we analyze the County's and State's liability on the basis of duty or legal causation." *Hartley*, 103 Wn.2d at 781. The court concluded,

we have premised legal causation (liability) on the existence of some direct contact or special relationship between the defendant and the injured party. In the case of an injury caused directly by a third party, we have attributed legal causation on the basis of the relationship between the defendant and the third party. In addition, we have recognized legal causation when legislation mandates protection of a "particular and circumscribed class of persons."

*Hartley*, 103 Wn.2d at 784 (citations omitted) (citing *Halvorson v. Dahl*, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978)). "Protected class" and "special relationship" are concepts relevant to the duty inquiry. *See Schooley*, 134 Wn.2d at 475; *Petersen*, 100 Wn.2d at 426; *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 307, 669 P.2d 468 (1983).

*Hartley* ultimately held that legal causation was lacking because "No special relationship . . . existed between the

government agents and either Johnson or the victim" and "nothing in the HTOA (Washington Habitual Traffic Offenders Act) indicates an intent to 'protect a particular and circumscribed class of persons.'" *Hartley*, 103 Wn.2d at 784, 785 (citing *Halvorson*, 89 Wn.2d at 676). The court's causation analysis was thus premised on duty concepts. As we agree that proximate cause cannot exist where a defendant owed a plaintiff no duty that would have prevented the plaintiff's injury, our proximate cause analysis will consider duty.

Thus, we must first decide whether the defendants owed Minahan any duty. If the defendants did not owe the duties that Minahan suggests, then further analysis is unnecessary. If they did owe a duty, then we must address the remaining aspect of legal causation: "whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." *Medrano v. Schwendeman*, 66 Wn. App. 607, 611, 836 P.2d 833 (1992).

## I. Duty

"A duty can arise either from common law principles or from a statute or regulation." *Doss v. ITT Rayonier, Inc.*, 60 Wn. App. 125, 129, 803 P.2d 4, *review denied*, 116 Wn.2d 1034 (1991). *See also Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932, 653 P.2d 280 (1982). The existence of a duty is a question of law, not fact. *Schooley*, 134 Wn.2d at 474. Minahan claims that the defendants owed her several duties.

First, Minahan asserts a premises liability claim against the Association and the School District. She argues that, as she was an invitee on a premises that the defendants possessed, the defendants had a duty to reasonably provide against Skrivan's criminally reckless conduct occurring on 9th Avenue. The second theory of liability is that the Association and School District breached their duty as lessors to make safe the dangerous parking condition on 9th Avenue by providing off-street parking. The third claim is

that Bettcher breached his duty as an employer to reasonably provide against foreseeable dangers of criminal misconduct during her employment. Finally, Minahan theorizes that the Association and School District were under a duty to exercise reasonable care to prevent her injury because they did acts by which she was foreseeably endangered.

A. Premises and Lessor Liability

 We analyze the premises and lessor liability theories simultaneously. Without deciding the issue, we have assumed that the Association and School District possessed and leased the premises, which is a circumstance necessary for the Association and School District to have owed the suggested duties. The remaining question is whether the duties owed required the Association and School District to act as Minahan suggests.

Minahan's lessor liability claim is, at base, a "common area" injury claim. The rule describing the applicable standard of care is that "where an owner divides his premises and rents certain parts to various tenants, while reserving other parts such as entrances and walkways for the common use of all tenants, it is his duty to exercise reasonable care and maintain these common areas in a safe condition." *Geise v. Lee*, 84 Wn.2d 866, 868, 529 P.2d 1054 (1975). Thus, consistent with Minahan's theory, a lessor bears a duty to act affirmatively to make dangerous conditions safe. *See* RESTATEMENT (SECOND) OF TORTS § 361 (1965).

Minahan's premises liability claim invokes the less familiar duty of a possessor to reasonably protect business invitees against a third person's foreseeable criminal acts. In *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 943 P.2d 286 (1997), the Supreme Court expressly adopted the *Restatement (Second) of Torts* § 344 (1965), which delimits a business's duty to its invitee. *Nivens* held that "a business owes a duty to its invitees to protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons. The business owner must take reasonable steps to prevent such harm." *Nivens*, 133 Wn.2d at 205.

The defendants argue that, although they owed the above duties generally, those duties required neither a warning about criminal conduct like Skrivan's nor the provision of off-street parking because the dangerous condition occurred off the premises, on 9th Avenue. The defendants' factual proposition is correct—even in a light kind to Minahan, the tragic accident occurred on 9th Avenue, which is apparently not fairgrounds property. Thus, we must decide whether the scope of the duty incumbent on the defendants as possessors and lessors required them to make safe or warn against dangerous conditions on adjoining, public property.

As to the common area claim, slip and fall cases on *publicly owned* sidewalks provide an apt analogy. In these cases, a lessor owes no duty to warn against or remedy dangerous conditions (i.e., ice or snow accumulations) unless the lessor has acted to remedy the condition, in which case the lessor undertakes the duty to act reasonably. *See Sorenson v. Keith Uddenberg, Inc.*, 65 Wn. App. 474, 479, 828 P.2d 650 (1992); *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 299, 545 P.2d 13 (1975). This principle does not depend for its vitality on facts or principles peculiar to slip and fall cases; it is merely a contextual application of the general rule that a lessor owes no duty as to dangerous conditions *existing off the premises* that the lessor did not create or attempt to make safe.

Under this theory, Minahan does not contend that the defendants tried to warn of or fix the dangerous parking condition and did so unreasonably. Her claim is simply that the defendants, as lessors, had a duty to make the condition safe but did nothing to satisfy that duty. Because the claimed dangerous condition existed off the premises, the defendants had no such duty.

As to whether the defendants owed a duty to warn of foreseeable criminal conduct occurring off the premises, the *Restatement (Second) of Torts* section 344 is informative. That section, which Minahan cites as authority for her claim, appears at chapter 13, Title E of the *Restatement*, which governs "Special Liability of Possessors of Land to *Invitees.*"

2 RESTATEMENT (SECOND) OF TORTS at 167 (emphasis added). Thus, to invoke the protections of section 344, a person must be an "invitee," which, by definition, requires that the person be on the premises. *See* RESTATEMENT (SECOND) OF TORTS § 332 (1965) (an invitee is "a person who is invited *to enter or remain on land ...*") (emphasis added).

Section 344 provides,

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public *while they are upon the land* for ... negligent, or intentionally harmful acts of third persons ... [caused by] the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts ... are likely to be done.

RESTATEMENT (SECOND) OF TORTS § 344 (emphasis added).

Section 344, comment *g*, clarifies that the rule not only makes it "the possessor's duty to protect his visitors after they have entered the land, but also to warn them before their entry of any acts or threatened acts ... which may endanger them if they enter." *See also Nivens*, 83 Wn. App. at 44 ("Section 344 appears to be based on the notion that one who controls any confined space, into which he or she invites the public, has an obligation of reasonable care to observe and control activities *within that space*.") (emphasis added).

Section 344 clearly contemplates only those foreseeable, criminal acts that occur *on the possessor's land*. Minahan has cited no contrary authority; in fact, she generally overlooks the point that Skrivan's conduct occurred off the premises. As authority indicates that a possessor's duty to invitees does not require precautions against foreseeable criminal conduct occurring off the premises, the Association and School District did not owe Minahan a duty to protect against conduct like Skrivan's.

As lessors and possessors of the premises, neither the Association nor the School District owed Minahan a duty to make the dangerous condition on 9th Avenue safe or to

reasonably provide against criminally reckless conduct occurring on 9th Avenue. Therefore, the trial court should have granted summary judgment on Minahan's premises and lessor liability theories.

## B. Employer Liability

 Minahan's third theory is that Bettcher breached his duty to provide a safe workplace by failing to "make reasonable provision against foreseeable dangers of criminal misconduct to which the employment exposes the employee." Br. of Resp't at 23.

> [A]n employer owes to an employee a duty to provide a safe place to work. The employer has a duty to make reasonable provision against foreseeable dangers of criminal misconduct to which the employment exposes the employee. Where the nature of the work is such that it exposes the employee to the risk of injury from the criminal acts of third persons, a jury question is raised as to whether the employer has been negligent in not foreseeing the risk of criminal acts and acting to protect employees against the danger.

*Bartlett v. Hantover*, 9 Wn. App. 614, 620-21, 513 P.2d 844 (1973), *rev'd on other grounds*, 84 Wn.2d 426, 526 P.2d 1217 (1974) (citations omitted). "When a duty is found to exist from the defendant to the plaintiff then concepts of foreseeability . . . define the scope of the duty owed." *Schooley*, 134 Wn.2d at 475.

As Minahan's employer, Bettcher owed her a duty of care. The question thus becomes whether a criminally reckless, drunken driver who veered into a legal parking space was a foreseeable risk of Minahan's employment on the night she was injured.[3]

Although, under *Bartlett*, the foreseeability of criminal acts is normally a jury question, we may decide the issue if

---

[3] Minahan argues that the foreseeable risk was "being struck by a vehicle." Br. of Resp't at 26. Under the facts of this case, the risk cannot be pleaded so generally. That Minahan was struck (1) while standing *behind* a legally parked vehicle and (2) by a grossly intoxicated driver is undisputed. Therefore, the harm that materialized and, thus, the harm that Minahan argues was foreseeable, was not merely that she would be "struck by a vehicle," it was that she would be struck by a criminally reckless driver while standing behind a legally parked vehicle.

reasonable minds would not differ. *Stenger v. State*, 104 Wn. App. 393, 404, 16 P.3d 655, *review denied*, 144 Wn.2d 1006 (2001). Here, reasonable minds would conclude only that Bettcher's disc jockey business fostered no foreseeable risk of criminal conduct.

Where there is no evidence that the defendant knew of the dangerous propensities of the individual responsible for the crime and there is no history of such crimes on the premises, the criminal conduct is unforeseeable as a matter of law. *Raider v. Greyhound Lines*, 94 Wn. App. 816, 819, 975 P.2d 518, *review denied*, 138 Wn.2d 1011 (1999). The only prior event that Minahan cites in support of foreseeability is the accident that occurred in *State v. Baker*, 56 Wn.2d 846, 355 P.2d 806 (1960). Minahan claims that the accident in *Baker* occurred one block away from the site of her injury and that Bettcher therefore should have known and warned about the dangers of criminally reckless drivers.

To hold that the *Baker* accident gave Bettcher cause to know of the dangers associated with parking along 9th Avenue would be unreasonable. First, the *Baker* accident occurred in 1958, almost 40 years before Minahan's injuries. *Baker*, 56 Wn.2d at 849. Second, and quite significantly, Minahan does not even assert that Bettcher knew of the *Baker* accident or any other similar incident.

Besides the *Baker* accident, Minahan asserts that "the character of [Bettcher's] business[ ] and the location of the area at which Ms. Minahan was directed to perform her loading" render Skrivan's conduct foreseeable. Br. of Resp't at 32. Bettcher's business was to provide disc jockey and entertainment services. Nothing about this business would cause a reasonable person to foresee criminal conduct like Skrivan's. And although a direction to perform any act near a roadway carries some foreseeable risk, it does not necessarily follow from that direction that criminally reckless conduct such as Skrivan's is foreseeable.

Cases from Washington and other jurisdictions finding employer liability for a third person's criminal acts show

that more is required to establish foreseeability. In *Bartlett*, the plaintiff, who managed the defendants' motel, was robbed twice in the motel's office in a three-month period. The court held that these facts were sufficient to put the foreseeability issue to the jury. *Bartlett*, 9 Wn. App. at 621. *See also Circle K Corp. v. Rosenthal*, 118 Ariz. 63, 68, 574 P.2d 856 (1977) (holding that robbery at convenience store was foreseeable via evidence of numerous other Circle K robberies in general vicinity); *Atl. Coast Line R.R. v. Godard*, 93 Ga. App. 671, 681, 92 S.E.2d 626 (1956) (holding that robbery and assault of railroad clerk was foreseeable when defendant railroad knew that hoboes and other "law violators" inhabited the area where criminal acts occurred); *Cooper v. State*, 89 A.D.2d 811, 453 N.Y.S.2d 483 (1982) (holding that rape of a student counselor, by inmate/client, at a maximum security prison was foreseeable because prison officials warned student about specific dangers of rape). In each of these cases, foreseeability was created by prior occurrences and clear dangers, characteristics absent in this case.

Even in a light favorable to Minahan, the facts involved permit but one reasonable conclusion: that Bettcher had no duty to provide against criminal conduct like Skrivan's because that conduct was not reasonably foreseeable. Thus, summary judgment should have been granted in Bettcher's favor on Minahan's employer liability claim.

Bettcher also argues that the Industrial Insurance Act immunizes him from Minahan's employment claim. He did not assert this defense to the trial court. We do not review on appeal an alleged error not raised at trial unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Therefore, we do not pass judgment on this claim.

C. Unreasonably Dangerous Activity

Finally, Minahan theorizes that the Association and School District bore the duty to exercise reasonable care to prevent her injury because they did acts involving unreasonable risks of harm. Minahan claims that the unreasonably dangerous activities were "Wes Hanson's failure to

have the keys to the gate[ ] [and] his directing Ms. Minahan to conduct unloading/loading from the street rather than from the off-street loading facilities." Br. of Resp't at 22. As the defendants have not argued otherwise, we accept for argument's sake that Hanson's actions are attributable to the Association and School District.

Minahan's claim correctly implies that every actor whose conduct involves an unreasonable risk of harm to another "is under a duty to exercise reasonable care to prevent the risk from taking effect." RESTATEMENT (SECOND) OF TORTS § 321 (1965). But we decline to hold that Hanson's failure to have the keys was an unreasonably dangerous action. From this act alone, a reasonable person would not have foreseen any risk or danger. Therefore, Hanson's failure spawned no duty to act on Minahan's behalf.

Minahan also cites Hanson's direction to load and unload from the spot on 9th Avenue. Because the parties have not briefed whether Hanson's actions involved any unreasonable risks, we will not decide the issue but will assume, for dispositional purposes, that the actions did involve unreasonable risks.[4] Thus, with the aid of our assumption, the Association and School District, via Hanson's direction, owed Minahan a duty to exercise reasonable care to prevent the occurrence of any foreseeable risks.

Foreseeability is normally for the trier of fact. Only where reasonable minds could not differ may a court decide foreseeability as a matter of law. *See Vannoy v. Pac. Power & Light Co.*, 59 Wn.2d 623, 632, 369 P.2d 848 (1962); *Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 875, 912 P.2d 1044 (1996). On these facts, we cannot hold that reasonable minds could reach but one conclusion as to whether Minahan's injury was a foreseeable risk. But, as we

---

[4] Hanson knew that Bettcher was the prom's disc jockey and that he therefore needed to unload equipment from the vehicle. A reasonable person might have realized that such an activity concentrates the worker's physical efforts and powers of perception, to a significant degree, on the equipment moved rather than the work environs. It is thus likely that Hanson's actions involved unreasonable risks.

decide at section II that legal cause is lacking, Minahan's final theory should not be put to the jury.

## II. Remaining Elements of Legal Cause

Our final task is to decide whether logic, common sense, justice, policy, and precedent support liability in this case. *See King*, 84 Wn.2d at 250. On this score, the defendants cite a series of cases that, they maintain, evinces a policy against holding others liable when an intoxicated person proximately causes harm. Though the cases involve drunk driving generally, they involve facts and liability theories so different from this case that they are not directly controlling. *See Hartley*, 103 Wn.2d 768 (plaintiff sued the State and Pierce County for negligence in failing to revoke an intoxicated driver's license under the Washington Habitual Traffic Offenders Act, chapter 46.65 RCW); *Braegelmann v. Snohomish County*, 53 Wn. App. 381, 766 P.2d 1137 (plaintiff sued Snohomish County for negligent road construction, design, and maintenance), *review denied*, 112 Wn.2d 1020 (1989); *Johnson v. State*, 68 Wn. App. 294, 841 P.2d 1254 (1992) (plaintiff sued King County, claiming that the County had negligently released an individual from prison who later became intoxicated and killed plaintiff's decedent while driving), *review denied*, 121 Wn.2d 1018 (1993).

 But these cases do reflect a general policy trend away from multiparty liability in like situations. And though that choice weighs lightly in our judgment, we pause to recognize it. "The best use that can be made of the [precedents] on proximate cause is merely to furnish illustrations of situations which judicious [people] upon careful consideration have adjudged to be on one side of the line or the other." 1 Thomas Atkins Street, The Foundations of Legal Liability 110 (1906).

Other considerations motivate our holding here. We note that Bettcher *selected* the parking space himself and that parking in similar, legal spaces is probably routine in the area given the fairground's proximity. Also, loading and

unloading personal items and even other people is not an uncommon activity for individuals who park in legal spaces on streets for easy access to a certain locale. All would face the same hazards that Minahan faced: those hazards attributable to traffic generally. To make each such parking situation a nest of liability with nothing more to link an adjoining business than a direction to unload from the selected space would be, in our view, extreme.

We emphasize though that we do not imply or hold that a similarly situated defendant can do no act that supports liability. For instance, if a defendant's employee were directing traffic and caused injury after waving a clearly intoxicated driver into a lane populated by parked vehicles, then the defendant's act may be so proximate to the injury that policy would not disfavor liability. But here, Hanson's direction bore only a remote, insubstantial nexus with Minahan's injury. In light of Skrivan's recklessness, we cannot hold that such a remote relationship to Minahan's injury establishes legal cause. The trial court therefore erred by denying summary judgment on Minahan's final liability theory.

Reversed and remanded to enter an Order of Dismissal as to Western Washington Fair Association, the Puyallup School District, and Alan Bettcher.

HUNT, C.J., and QUINN-BRINTNALL, J., concur.

Review denied at 151 Wn.2d 1007 (2004).