252 P.3d 914 (2011)
M.H., Appellant,
v.
CORPORATION OF the CATHOLIC ARCHBISHOP OF SEATTLE, Respondent.
No. 64566-8-I.
Court of Appeals of Washington, Division 1.
June 6, 2011.
*916 Michael Thomas Pfau, Pfau Cochran Vertetis Kosnoff PLLC, Bryan Daniel Doran, Short Cressman & Burgess, PLLC, Daniel Troy Logan Fasy, Kosnoff Law Firm, Seattle, WA, for Appellant.
Michael Alexander Patterson, Karen Adell Kalzer, Mark Allen Anderson, Nicole M. Brodie, Patterson Buchanan Fobes Leitch & Kalzer, Seattle, WA, for Respondent.
SCHINDLER, J.
¶ 1 M.H. filed a lawsuit against the Corporation of the Catholic Archbishop of Seattle (the Archdiocese) alleging childhood sexual abuse. The trial court granted the motion to dismiss the complaint under CR 12(c). We reverse and remand.
¶ 2 Father Edmund Boyle had a lengthy and extensive history of sexual misconduct.[1] In the early 1960s, the Archdiocese assigned Father Boyle to work as an associate pastor at Saint James Cathedral in Seattle. M.H.'s mother and her children lived near Saint James and were members of the church. In his role as a priest at Saint James, Father Boyle gained the trust of M.H.'s mother and her children. Father Boyle developed a very close relationship with M.H.'s mother and assumed a supervisory role over five-year-old M.H. and her brothers.
¶ 3 During this time period, Father Boyle arranged to have a picnic with M.H.'s mother and her children. Father Boyle invited two men and a woman to attend the picnic. Before the picnic, Father Boyle brought the two men and the woman to M.H.'s house and introduced them to M.H.'s mother and the *917 children. One of the men offered to drive M.H. to the picnic. The man asked M.H.'s mother if he could take M.H. with him to get supplies before going to the picnic. Father Boyle assured M.H.'s mother "that this would be a good idea." Based on Father Boyle's assurances, M.H.'s mother allowed the man to drive M.H. to the picnic.
¶ 4 Before going to the picnic, the man stopped at an apartment building located nearby. He took M.H. to an apartment in the building and gave her "paper and pencils to play with while he sexually abused her." Afterwards, M.H. said that she "felt sick and dizzy," and the man carried her to the car before driving to the picnic.
¶ 5 After the picnic was over, M.H. told her mother that the man had sexually abused her. M.H.'s mother told her to tell Father Boyle what happened. When M.H. told Father Boyle that the man sexually abused her, Father Boyle comforted M.H. but instructed her to never tell anyone else about what the man did to her. Father Boyle never reported the sexual abuse of M.H. to the authorities.
¶ 6 On May 7, 2009, M.H. filed a complaint for damages for childhood sexual abuse against the Archdiocese. M.H. alleged that the Archdiocese had a duty to control Father Boyle and prevent the sexual abuse from occurring. M.H. further alleged that the Archdiocese knew or should have known that Father Boyle had an extensive history of sexual misconduct with children, yet the Archdiocese placed Father Boyle in a position that allowed him to facilitate the sexual molestation of M.H.
¶ 7 The Archdiocese filed a motion for judgment on the pleadings under CR 12(c). The Archdiocese argued that as a matter of law, it did not have a duty under C.J.C. v. Corp. of the Catholic Bishop of Yakima, 138 Wash.2d 699, 985 P.2d 262 (1999) for "the acts of the unidentified man who assaulted M.H.,"[2] and that legal causation did not exist.
¶ 8 The trial court dismissed M.H.'s lawsuit against the Archdiocese with prejudice. The trial court ruled that even assuming that Father Boyle "associated with other child molesters" and that the Archdiocese "was aware or should have been aware of [Father] Boyle's associations with other child molesters," there was no connection between the Archdiocese and the unidentified man. The trial court's written order states, in pertinent part:
For a special relationship to exist and for the harm to M.H. to have been foreseeable, there would have to be some fact about the unidentified person to link him to the [Archdiocese] and thus create the special relationship under the factors articulated in CJC, 138 Wash.2d at 724 [985 P.2d 262]. Since no such fact can ever be discovered, this link cannot be established. [The Archdiocese] does not have a duty to M.H. for the acts of an unidentified third party who has no provable connection to [the Archdiocese], other than a known momentary association with [Father] Boyle.

Standard Of Review
¶ 9 We review the CR 12(c) dismissal of M.H.'s lawsuit against the Archdiocese de novo. Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005). A dismissal under CR 12(c) is appropriate only if "`it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 120, 744 P.2d 1032 (1987) (quoting Bowman v. John Doe Two, 104 Wash.2d 181, 183, 704 P.2d 140 (1985)). In undertaking such an analysis, the "plaintiffs allegations are presumed to be true and a court may consider hypothetical facts not included in the record." Tenore v. AT & T Wireless Servs., 136 Wash.2d 322, 330, 962 P.2d 104 (1998). Accordingly, we must take the facts alleged in the complaint, as well as hypothetical facts, in the light most favorable to the nonmoving party. Postema *918 v. Pollution Control Hearings Bd., 142 Wash.2d 68, 122-23, 11 P.3d 726 (2000).
¶ 10 A motion to dismiss under CR 12(c) should be granted "`sparingly and with care,' and `only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" Tenore, 136 Wash.2d at 330, 962 P.2d 104 (Quoting Hoffer v. State, 110 Wash.2d 415, 420, 755 P.2d 781 (1988)). "`[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiffs claim.'" Bravo v. Dolsen Cos., 125 Wash.2d 745, 750, 888 P.2d 147 (1995) (quoting Halvorson v. Dahl, 89 Wash.2d 673, 674, 574 P.2d 1190 (1978)).

Duty
¶ 11 M.H. contends that the trial court erred in granting the motion to dismiss her lawsuit against the Archdiocese under CR 12(c). M.H. asserts the harm to M.H. was foreseeable and the Archdiocese had a duty to control Father Boyle and prevent him from facilitating the sexual abuse of M.H. M.H. concedes the Archdiocese "does not have a duty to M.H. for the acts of an unidentified third party."
¶ 12 The Archdiocese argues, as it did below, that because there was no connection between the unidentified abuser and the Archdiocese, M.H. cannot establish that the Archdiocese owed her a duty under C.J.C. The Archdiocese also argues that the risk of harm for criminal acts committed by an unidentified man was not foreseeable.
¶ 13 To prove negligence, M.H. must establish: (1) the existence of a duty, (2) breach of that duty, and (3) injury proximately caused by the breach. Hansen v. Friend, 118 Wash.2d 476, 479, 824 P.2d 483 (1992). The threshold determination in a negligence action is whether the defendant owes a duty of care to the plaintiff. Taylor v. Stevens County, 111 Wash.2d 159, 163, 759 P.2d 447 (1988). The existence of a legal duty is a question of law. Pedroza v. Bryant, 101 Wash.2d 226, 228, 677 P.2d 166 (1984).
¶ 14 As a general rule, there is no duty to prevent a third party from committing an intentional or criminal act causing injury to another unless "a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." Petersen v. State, 100 Wash.2d 421, 426, 671 P.2d 230 (1983). The Restatement (Second) of Torts section 315 (1965) states, in pertinent part:
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
¶ 15 In C.J.C., the Washington State Supreme Court held that because Calvary Baptist Church of Twisp (Church) has a special relationship with the children of it congregation, it has a "duty to protect the children of its congregation against foreseeable harms perpetrated by a Church official whom the Church placed in authority and in close relationship to church children, knowing of the danger." C.J.C. 138 Wash.2d at 722, 985 P.2d 262 (internal quotation marks omitted). The Court concluded that the Church "owed a duty of reasonable care to affirmatively act to prevent the harm," based on its relationship to the plaintiffs and the deacon, and in light of its knowledge that the deacon had abused other children. C.J.C., 138 Wash.2d at 727, 985 P.2d 262. The Court emphasized that "the focus is not on where or when the harm occurred, but on whether the Church or its individual officials negligently caused the harm by placing its agent into association with the plaintiffs when the risk was, or should have been, known." C.J.C., 138 Wash.2d at 724, 985 P.2d 262.
¶ 16 Because a jury "could reasonably find the Church knew or should have known the children of its congregation, and specifically these particular plaintiffs, were exposed to an unreasonable risk of harm at the hands of [the deacon]," the Court concluded that a reasonable jury could find that the deacon's position in the Church that allowed him to establish a relationship with the children in his care was a causal factor in the resulting *919 harm. C.J.C., 138 Wash.2d at 725-26, 985 P.2d 262.
¶ 17 In reaching the conclusion that the Church owed a duty of reasonable care to prevent the harm to the children of the congregation, the Court took into consideration four factors: (1) the special relationship between the Church and the deacon, (2) the special relationship between the Church and the children, (3) the knowledge of the risk of harm, and (4) the causal connection between the abuser's position in the Church and the resulting harm. C.J.C., 138 Wash.2d at 724, 985 P.2d 262.
[W]e find the conjunction of four factors present in the case before us decisive to finding the existence of a duty is not foreclosed as a matter of law: (1) the special relationship between the Church and [the deacon]; (2) the special relationship between the Church and the plaintiffs; (3) the alleged knowledge of the risk of harm possessed by the Church; and (4) the alleged causal connection between [the deacon's] position in the Church and the resulting harm.
C.J.C., 138 Wash.2d at 724, 985 P.2d 262.
¶ 18 For purposes of CR 12(c), the Archdiocese does not dispute that there was a special relationship between the Archdiocese and Father Boyle, or that there was a special relationship between the Archdiocese and M.H. Nor does the Archdiocese dispute that it knew that Father Boyle had a lengthy and extensive history of sexual misconduct. The Archdiocese argues that M.H. cannot establish a duty under C.J.C. because there is no causal connection between the Archdiocese and the resulting harmthe sexual abuse of five-year-old M.H. by the unidentified man.
¶ 19 Assuming M.H.'s allegations are true and considering all conceivable facts in support of the allegations, the complaint states sufficient facts to establish the Archdiocese had a duty under C.J.C. Contrary to the argument of the Archdiocese, the allegations establish a connection between Father Boyle and the unidentified man who sexually abused M.H.
¶ 20 Despite a known history of sexual misconduct with children, the Archdiocese assigned Father Boyle as an associate pastor at Saint James Cathedral. As a priest, Father Boyle was able to establish a position of trust with M.H.'s mother and exercise authority and control over M.H. The alleged facts also show that Father Boyle knew the unidentified man planned to sexually abuse M.H. and was instrumental in arranging the opportunity for the man to do so.
¶ 21 Father Boyle planned the picnic with M.H.'s mother and her children. Father Boyle invited the unidentified man to go to the picnic with the family, brought the man to M.H.'s home, and introduced the man to M.H.'s mother and five-year-old M.H. When the man asked if he could drive M.H. to the picnic, Father Boyle vouched for the man and told M.H.'s mother that she should allow M.H. to drive with the man to the picnic. When M.H. told Father Boyle that the man had sexually molested her, Father Boyle instructed her not to tell anyone and never reported the abuse to the authorities.
¶ 22 The Archdiocese also argues that because sexual abuse by an unknown third party over whom it had no authority was not foreseeable, there is no duty under C.J.C. Foreseeability limits the scope of the duty owed. Christen v. Lee, 113 Wash.2d 479, 492, 780 P.2d 1307 (1989).[3] The harm must be reasonably perceived as within the general field of danger which should have been anticipated. Christen, 113 Wash.2d at 492, 780 P.2d 1307. As a general rule, foreseeability is a question for the jury unless the circumstances of the inquiry "`are so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" Shepard v. Mielke, 75 Wash.App. 201, 206, 877 P.2d 220 (1994) (quoting McLeod v. Grant County Sch. Dist. No. 128, 42 Wash.2d 316, 323, 255 P.2d 360 (1953)).
¶ 23 Based on the facts alleged in the complaint, the sexual molestation of M.H. was not wholly beyond the range of expectability. Despite knowing that Father Boyle's *920 history of sexual misconduct increased the risk of harm to children, the Archdiocese did not keep Father Boyle away from children. Instead, the Archdiocese placed him in a position that allowed him to arrange the abuse of M.H. by someone he knew would sexually molest her.
¶ 24 Minahan v. Western Washington Fair Ass'n, 117 Wash.App. 881, 73 P.3d 1019 (2003) is distinguishable. In Minahan, the court held that the criminally reckless conduct of a drunk driver on a public road was unforeseeable as a matter of law because the defendant did not know of "the dangerous propensities of the individual responsible for the crime[,] and there is no history of such crimes on the premises." Minahan, 117 Wash.App. at 895, 73 P.3d 1019. Here, unlike in Minahan, the allegations show that the Archdiocese knew about the "dangerous propensities" of Father Boyle and the risk of harm to children. The question of whether the risk of harm was reasonably foreseeable is a question of fact to be determined by a jury. Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 477, 951 P.2d 749 (1998).

Legal Causation
¶ 25 The Archdiocese also argues that as a matter of law, M.H. cannot establish causation. Proximate cause consists of cause in fact and legal causation. Hartley v. State, 103 Wash.2d 768, 777, 698 P.2d 77 (1985). "Cause in fact, or `but for' causation, refers to `the physical connection between an act and an injury.'" Ang v. Martin, 154 Wash.2d 477, 482, 114 P.3d 637 (2005) (quoting Hartley, 103 Wash.2d at 778, 698 P.2d 77).[4] On the other hand, legal causation is grounded in the determination of how far the consequences of a defendant's act should extend, and focuses on whether the connection between the defendant's act and the result is too remote or inconsequential to impose liability. Hartley, 103 Wash.2d at 779, 698 P.2d 77. Legal causation is a question of law. Kim v. Budget Rent A Car Sys., Inc., 143 Wash.2d 190, 204, 15 P.3d 1283 (2001). The determination of legal liability depends on "`mixed considerations of logic, common sense, justice, policy, and precedent.'" Schooley, 134 Wash.2d at 479, 951 P.2d 749 (quoting King v. City of Seattle, 84 Wash.2d 239, 250, 525 P.2d 228 (1974)). Here, assuming the allegations in the complaint are true, the connection between the Archdiocese and the harm to M.H. is not so remote or insubstantial that there is no legal liability.
¶ 26 We reverse the decision under CR 12(c) to dismiss M.H.'s complaint against the Archdiocese for damages from childhood sexual abuse, and remand.
WE CONCUR: LEACH, A.C.J., and APPELWICK, J.
NOTES
[1] In the 1990s, the Archdiocese released files showing that it knew Father Boyle had a lengthy and extensive history of sexual misconduct. For example, a memo to the Archbishop states, in pertinent part:

I have just completed a review of Father Boyle's secret file. . . . It is clear that Father Boyle has an extensive history of alcoholism, and enmeshed with this, an equally extensive history of sexual misconduct, both homosexual and heterosexual. The homosexual acting out has been with adolescents. The heterosexual behavior has been with both adolescents and adults.
[2] The attorneys conceded at oral argument that the identity of the man who sexually abused M.H. was unknown.
[3] M.H. concedes that the church did not have a duty to control the actions of the unknown man who sexually abused her.
[4] Cause in fact is generally a question of fact for the jury. Schooley, 134 Wash.2d at 478, 951 P.2d 749.