IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAIAH RIDEOUT and JOEY RIDEOUT, husband and wife, and marital community composed thereof, | ) ) ) ) | No. 78898-1-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) ) | |
| CITY OF BELLINGHAM and DAVID ALAN FRICK, | ) ) ) ) | |
| Respondent. | ) ) ) | FILED: October 21, 2019 |

HAZELRIGG-HERNANDEZ, J. — Michaiah and Joey Rideout appeal the trial court's grant of summary judgment and dismissal of all claims against the City of Bellingham. They argue only the claims of vicarious liability were before the court, thus the court erred in dismissing the direct liability claims. They further argue that disputes of material fact exist as to the City of Bellingham's vicarious liability for the tortious conduct of their employee and as to the City of Bellingham's direct negligence. We affirm.

## FACTS

David A. Frick was employed by the City of Bellingham (City) as a recreation instructor at the Arne Hanna Aquatic Center (Aquatic Center). Frick had worked at the Aquatic Center from 1996 to 2016. Frick's duties included lifeguarding,

leading water aerobics classes, and swimming lessons. Frick was also tasked with opening the pool in the morning, verifying lifeguard staff's timesheets, and purchasing first aid and safety equipment.

Frick was arrested on suspicion of possession of child pornography on August 4, 2016. During a police interview subsequent to Frick's arrest, he admitted that he had been secretly video recording his coworkers while changing into and out of their swimsuits at work. Frick captured his recordings by hiding a cell phone with a camera in a locked locker in the staff changing room. Bellingham police were able to identify the victims in these recordings when they seized Frick's computer devices and phone.

It was established that Michaiah Rideout was one of the victims of Frick's secret recordings at work. The City was notified of Frick's conduct and these recordings on August 5, 2016, one day after his arrest. Frick's superiors and coworkers were shocked by the news. During Frick's twenty-year employment at the Aquatic Center no one had ever complained about inappropriate behavior by him. The only complaint recalled by the Aquatic Center manager, Lori Johnson, was when a patron indicated that Frick told jokes during water aerobics class. Only two fellow employees recalled seeing Frick with a cell phone at work. Michaiah and Joey Rideout (collectively the Rideouts) sued the City in April of 2017, alleging the City was vicariously liable for Frick's conduct, the City had created a hostile work environment by failing to protect employees from Frick and that the City breached a duty to inspect for hazardous conditions.

In December 2017, the City moved for summary judgment dismissal of the plaintiffs' claims. The City's motion denied vicarious liability for Frick's conduct since it was outside the scope of his employment and further denied that they had created a hostile work environment. The Rideouts filed a response brief in February 2018 which clarified the negligent supervision claim, however they failed to assert any contrary evidence regarding a dispute of fact for the vicarious liability claims. The City's reply brief expressly addressed the negligent supervision claim and again asked the trial court to dismiss the City from the suit.

At oral argument on the summary judgment motion, both parties discussed the vicarious liability, hostile work environment, and negligent supervision claims. Just prior to the judge's ruling, the Rideouts asserted that they had unresolved direct negligence claims against the City under Restatement (Second) of Torts Section 317 (American Law Institute 1965). The trial court judge granted the motion for summary judgment on all claims and dismissed the City from the suit. The Rideouts continued to argue that the City had not addressed all claims, but the City pointed out that the foreseeability element was key to all claims and that had been thoroughly analyzed. The trial court affirmed its ruling on summary judgment on all claims and the City's dismissal from the suit. The Rideouts were later granted summary judgment on their claims against Frick in a separate hearing. The Rideouts appeal the trial court's order granting the City's summary judgment motion on all claims and dismissal from the suit.

## DISCUSSION

I.    The court properly dismissed all claims against the City.

All claims against the City were properly before the trial court, despite the Rideout's argument that the City's motion only addressed claims based on vicarious liability. The record of oral argument on the motion clearly shows that the City discussed all of the claims brought by the Rideouts that they characterize as direct negligence by the City. The City stated that "it's easiest to divide up the claims" in reference to those based in vicarious and direct liability theories and then argued as to each of the claims set out in the Rideout's complaint. The Rideouts assert that only the claims grounded in vicarious liability were before the court.

The Rideouts rely on White v. Kent Medical Center, Inc. in support of their position. 61 Wn. App. 163, 810 P.2d 4, 10 (1991). In White, the party moving for summary judgment raised new issues in its rebuttal materials that had not been raised in the initial summary judgment motion. Id. at 168. Unlike White, the City's arguments here were consistent from the outset that no issues of material fact exist regarding foreseeability of Frick's actions or his alleged status as a manager or supervisor at the Aquatic Center. As discussed below, foreseeability is a key element of each of the claims alleged by the Rideouts.

The City's memorandum in support of its motion for summary judgement addressed the direct negligence claims stating, "there is no evidence showing that the City authorized, knew, or should have known of Frick's alleged harassing behavior against his coworkers or that the City failed to take prompt and adequate

remedial action." The City again focused on the direct negligence claims later in that same memorandum reiterating that "there is no evidence that the City authorized, knew, or should have known about Frick's behavior." The City's memorandum explicitly pointed out that the Rideouts acknowledged the lack of foreseeability, "Plaintiff Micaiah [sic] Rideout said 'absolutely not' when asked if there were any signs that Frick was capable of such behavior." Each of these arguments in support of the City's motion is an explicit reference to foreseeability; one of the essential elements of a claim for direct liability for an employer under the Restatement (Second) of Torts Section 317. All claims against the City were properly before the trial court in the summary judgment motion and the parties had an opportunity to argue their respective positions at the hearing.

II.   There was no genuine issue of material fact as to the City's alleged vicarious liability for Frick's tortious conduct.

On appeal of an order granting summary judgment, this court reviews de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). A "material fact" is "one upon which the outcome of the litigation depends." Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977)

The City points out that the Rideouts' briefing does not challenge the City's denial of vicarious liability. In the Rideouts' response to summary judgment, they explicitly state "[p]laintiffs submit questions of fact exist under Restatement

(Second) of Torts § 317 as to COB's direct liability, as opposed to vicarious liability." Both the vicarious liability of the City and any independent direct negligence tort claim of a hostile work environment hinge on whether Frick's actions were foreseeable. The Rideouts did not advance any genuine issue of material fact about the foreseeability of Frick's conduct and their challenge fails. The Rideouts did raise a general concern of video voyeurism within public pools, but that is unresponsive to the City's foreseeability arguments. The Rideouts went so far as to undercut their own assertions about a generalized concern within the pool industry arguing "[h]ad COB adopted a policy prohibiting recording devices at Arne Hanna, they could face liability for Frick's violation of that policy." However, the Rideouts' position is in tension with state law.

Washington case law is clear that unless an employee's sexual misconduct was foreseeable, the employer is generally not liable. For an employer to be vicariously liable for an employee's misconduct, the threshold questions are whether that employee was acting in the furtherance of the employer's business and within the scope of employment. Henderson v. Pennwalt Corp., 41 Wn. App. 547, 552, 704 P.2d 1256 (1985). This court has stated, "where an employee commits an assault in order to effect a purpose of his or her own, the employer is not liable." Thompson v. Everett Clinic, 71 Wn. App 548, 551, 860 P.2d 1054 (1993). In Thompson, the court further explained:

> [W]here the servant's intentionally tortious or criminal acts are not performed in furtherance of the master's business, the master will not be held liable as a matter of law even though the employment situation provided the opportunity for the servant's wrongful acts or the means for carrying them out.

Id. at 553 (citing Kuehn v. White, 24 Wn. App. 274, 278, 600 P.2d 679 (1979)).

In Thompson, the court held that the actions of a doctor manually obtaining sperm samples from patients during routine examinations were outside the scope of employment. Id. at 554-56. The Washington Supreme Court reinforced this in Robel v. Roundup Corp., stating, "this court has also determined that, where an employee's acts are directed toward personal sexual gratification, the employee's conduct falls outside the scope of his or her employment." 148 Wn.2d 35, 54, 59 P.3d 611 (2002).

In the present case, Frick's conduct of attaching a cell phone with a camera inside a locker to record his co-workers changing is an undisputed fact. This act was clearly unauthorized by Aquatic Center management and undertaken for Frick's own sexual gratification so should be understood as squarely outside his scope of employment. He engaged in this conduct for personal gratification unrelated to his employer. On these facts, the City cannot be vicariously liable. The trial court's ruling on summary judgment in favor on the City on the vicarious liability claims was proper.

III.    No genuine issue of material fact exists as to the City's alleged direct liability under Restatement (Second) of Torts Section 317.

The City correctly asserts that all of the Rideouts' direct negligence claims turn on the foreseeability of Frick's actions. The Rideouts failed to allege any facts to establish that Frick's conduct was foreseeable, therefore subjecting the City to a direct liability claim under Restatement (Second) of Torts Section 317 for failure to protect its employees or to inspect for hazardous conditions.

An employer can be directly liable for conduct that is outside of the scope of employment if the acts of the employee were foreseeable. In Thompson, the court articulated the standard as a question of whether the employer had prior knowledge of the dangerous tendencies of the employee. 71 Wn. App. at 555. Like the present case, Thompson was also an appeal by the victim after summary judgment was granted in favor of the employer. Id. The Thompson victims failed to offer substantial evidence establishing a genuine issue of material fact that the clinic knew or should have known, or failed to exercise reasonable care to know of the doctor's inappropriate sexual conduct. Id.

The Rideouts did not offer evidence that the Aquatic Center management knew or should have known of Frick's dangerous propensity. The only known issue as to Frick's conduct during his employment was a single patron complaining that he would "test" jokes during water aerobics class. There is nothing in the record to suggest the jokes made in class were sexual in nature. There was, however, undisputed evidence introduced that the same year that Frick's conduct was discovered, the Aquatic Center had an issue with some female staff members' underwear being stolen from their lockers and some having strange suggestive messages and fixtures attached to them. Some other staff members reported similar findings as to their underwear left inside their lockers. The City investigated this incident and determined a janitorial staff member from another department was responsible.

The Rideouts rely on the fact that Frick placed a lock on his staff locker to accomplish his surreptitious recordings as indicative of Frick's acts being

foreseeable to the City. The record suggests that Frick was the only employee to use a lock. However, without more, utilization of a lock on a locker is merely evidence of seeking to protect the contents from theft or other disturbance, particularly in light of the issues with the janitor removing or affixing messages to undergarments. To bolster their claims that the City should have known of Frick's dangerousness, the Rideouts also cite statements from two Aquatic Center employees that they had seen Frick with a cell phone at work. Simply having a cell phone in one's possession at work is not evidence of that person's intent to illegally record their coworkers. Acceptance of this position would result in untenable consequences for employers across a variety of industries and professional fields. We do not agree that these assertions are sufficient to establish any dispute of material fact regarding the foreseeability of Frick's actions.

A. General concern within an industry does not establish the particularized dangerousness of a specific employee.

For an employer to be liable in Washington under a claim for negligent supervision under Restatement (Second) of Torts § 317(b), courts have required that the employer have knowledge of the dangerous tendencies of that particular employee. Niece v. Elmview Grp. Home, 131 Wn.2d. 39, 52, 929 P.2d 420, 423 (1997). The Supreme Court recently upheld this requirement in Anderson v. Soap Lake School District. 191 Wn.2d 343, 423 P.3d 197 (2018). In Anderson, the Court rejected the assertion that there was evidence of a particularized danger as to a basketball coach who did not have a record of misconduct in his employment, but

where the school district knew that he would host parties with students at his home. Id. at 353, 357.

In Anderson, two students were killed after leaving a high school coach's home where they had been served alcohol at one of the parties he hosted for students. Id. at 348. The parents of one of the students brought a negligent supervision claim against the school district for failing to supervise conduct outside of the scope of the coach's employment when the district knew the coach hosted pizza parties at his home. Id. at 351-52, 360. The school district was granted summary judgment on the claim and the Court affirmed, finding there was no evidence of particularized dangerousness of the coach, other than general dangers of teachers possibly giving alcohol to students. Id. at 364, 377.

The Rideouts argue that the exhibits they submitted about the general issue of video voyeurism at swimming pools raised an issue of material fact as to whether the city was aware or should have been aware of the possibility that Frick would engage in such conduct. The Rideouts offered the testimony of purported expert, Rhonda Stouder, to discuss the risk of video voyeurism at pools, and a number of newspaper articles from across the country about incidents of video voyeurism. Though the Rideouts offered these documents, the City challenged the materials and also the propriety of their consideration by the court. It is unclear from the record if this information from the Rideouts factored into the court's decision.

However, these materials would only support general knowledge of the broad concern of pool voyeurism which is insufficient under Anderson. Restatement (Second) of Torts § 317(b)(ii) explains that liability may be found

where the employer, "knows or should know of the necessity and opportunity for exercising such control." Id. at 363 (emphasis omitted). The purported evidence of video voyeurism at pools at best raises an issue of a general danger within the industry. The Anderson court explained that issues of general danger go to negligent protection not negligent supervision for purposes of employer liability. Id. at 365.

B. There is no evidence regarding a breach of any duty owed to Ms. Rideout by the City; therefore, any negligent protection claim fails.

An employer owes a duty to an employee to make "reasonable provision against foreseeable dangers of criminal misconduct to which the employment exposes the employee." Minahan v. W. Wash. Fair Ass'n, 117 Wn. App. 881, 894, 73 P.3d 1019 (2003) (quoting Bartlett v. Hantover, 9 Wn. App 614, 621, 513 P.2d 844 (1974), rev'd on other grounds, 84 Wn.2d 426, 526 P.2d 1217 (1974)). Any claim by the Rideouts based on negligent protection returns to the analysis of whether the City should have foreseen Frick's conduct. This foreseeability analysis follows the same reasoning as set out above because "[w]here there is no evidence that the defendant knew of the dangerous propensities of the individual responsible for the crime and there is no history of such crimes on the premises, courts have held the criminal conduct unforeseeable as a matter of law." Raider v. Greyhound Lines, Inc., 94 Wn. App 816, 819, 975 P.2d 518 (1999).

Again, there is no evidence that the City should have foreseen Frick's actions. All employees interviewed pursuant to this case were shocked when they learned that Frick had engaged in this tortious conduct and no one foresaw that he

was possible of such, including Rideout herself. All of the Rideout's claims, including those based on direct negligence, hinge on the foreseeability element and the facts surrounding each of those claims are undisputed. The facts that Frick used a lock on his locker and that two employees had seen him at work with a phone are insufficient to establish a genuine issue of material fact as to the foreseeability of Frick's conduct. Stouder's opinion and the newspaper articles offered with the Rideouts' motion opposing summary judgment similarly fail as to the particular dangerousness of Frick, but also as to a generally foreseeable danger, which would have been essential in order to establish a duty for the City. The record clearly demonstrates that all of the claims raised by the Rideouts were challenged by the City's motion and properly before the court for argument. In light of the argument and evidence, the trial court did not err in granting summary judgment in favor of the City and dismissing them from the suit.

Affirmed.

WE CONCUR: